


NO.:________________

IN THE
SUPREME COURT OF THE UNITED STATES

ARTRONE CHEATHAM,

*Petitioner,*

vs.

THE UNITED STATES OF AMERICA,

*Respondent.*

**On Petition For A Writ of Certiorari**
**To The Supreme Court of the United States**
**From Decision of the United States Court of Appeals for**
**The Eleventh Circuit**

# PETITION FOR WRIT OF CERTIORARI

DONALD G. MADISON
Attorney for Petitioner
418 Scott Street
Montgomery, Alabama 36104
(334) 263-4800

## QUESTIONS PRESENTED FOR REVIEW

I. This case requires reversal because of reference to and use of information Carter provided in his proffer meeting where said information was presented at both grand jury proceedings; more specifically in obtaining the superseding indictment alleging the conspiracy between Co-Defendants Carter and Cheatham which added Cheatham to the Indictment.

II. Salery's testiony as to what Carter allegedly said about the other cocaine being Cheatham's was testimonial hearsay and prohibited from use before the grand jury and at trial.

(A) Carter's statement was testimonial hearsay and prohibited from use before the grand jury and at trial.

(B) Carter's statement did not qualify as a co-conspirator's statement as it was used against Carter to support the conspiracy charge.

See also III (a) and (b) and the credibility and reliability of the Salery testimony in light of the Rule 35 downward departure.

III. That the trial court violated Cheatham's right to trial by jury in sentencing Cheatham on hearsay testimony provided by Salery attributed to the co-conspirator Carter where:

(a) the Salery testimony was not alleged in the Indictment and, therefore, could not be found as an element of the offense by the jury; and

(b) Cheatham's confrontation rights and right to cross-examine the declarant were violated.

IV. The Trial Court and the Eleventh Circuit ignored the compelling prejudice which arose from the joint trial of Cheatham and Carter where the Government had stipulated that none of the physical evidence in the case applied to

Cheatham particularly where the Trial Court refused to sustain Cheatham's objections to admission of the Carter physical evidence against Cheatham.

There was a fatal variance between indictment alleging conspiracy to sell crack cocaine and proof of allegedly Salery's sale of powder cocaine, particularly where the second trial Judge refused Cheatham a jury charge on the difference between crack and powder where the instruction was provided for Cheatham in the first, severed trial.

(A) Congress in enacting the sentencing guidelines acknowledged the difference between crack and cocaine powder.

(B) There was no testimony Cheatham converted powder to crack nor was there testimony which would make this inference forseeable by Cheatham.

(C.) A constructive amendment to the Indictment occurred in the jury finding that Cheatham engaged in a conspiracy to sell crack cocaine.

(D) The only evidence (which Cheatham denies) at best supported separate conspiracies (i.e., Salery sold to Carter (buyer/seller) and Salery sold to Cheatham (buyer/seller).



## PARTIES TO THE PROCEEDINGS

Petitioner: Artrone Cheatham

Counsel for Petitioner:
Donald G. Madison, Esquire
418 Scott Street
Montgomery, Alabama 36104

Respondent: The United States of America

Counsel for Respondent:
Honorable Leura G. Canary
United States Attorney
Middle District of Alabama
Post Office Box 197
Montgomery, Alabama 36101-0197

Honorable Todd A. Brown
Assistant United States Attorney
Middle District of Alabama
Post Office Box 197
Montgomery, Alabama 36101-0197

Honorable W. Harold Albritton, III
United States District Judge
Middle District of Alabama
United States Courthouse
15 Lee Street
Montgomery, Alabama 36104

Maurice S. Bell, Esquire
609 South McDonough Street
Montgomery, Alabama 36104

Honorable Delores R. Boyd
United States Magistrate Judge
Middle District of Alabama
15 Lee Street
Montgomery, Alabama 36104

Honorable Ed E. Carnes
United States Judge
United States Court of Appeals for the Eleventh Circuit
56 Forsyth Street N.W.
Atlanta, Georgia 30303

Jimmy Carter, Jr. 10986-002
Co-Defendant
Delta B
Federal Correctional Institution
Post Office Box 34550
Memphis, Tennessee 38138-0550

Artrone Cheatham, 11101-002
Defendant-Appellant
FCI
Post Office Box 9000
Forest City, Arkansas 72336

Honorable Charles S. Coody
Chief United States Magistrate Judge
Middle District of Alabama
15 Lee Street
Montgomery, Alabama 36104

Honorable Mark E. Fuller
United States District Judge
Middle District of Alabama
15 Lee Street
Montgomery, Alabama 36104

Honorable James C. Hill
Senior United States Judge
United Court of Appeals for the Eleventh Circuit



56 Forsyth St. N.W.
Atlanta, Georgia 30303

Honorable Frank M. Hull
United States Judge
United States Court of Appeals for the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Honorable Reginald C. Lindsey
United States District Judge
Boston, Massachusetts

Honorable Lyle Strom
United States District Judge
United States Federal Courthouse
111 South 18th Plaza
Suite 3190
Omaha, Nebraska 68102

Honorable Myron H. Thompson
United States District Judge
Middle District of Alabama
15 Lee Street
Montgomery, Alabama 36104

## TABLE OF CONTENTS


Page(s)

QUESTIONS PRESENTED FOR REVIEW ..... i

PARTIES TO THE PROCEEDING ..... iii

PETITION FOR WRIT OF CERTIORARI ..... 1

OPINIONS BELOW ..... 2

JURISDICTION ..... 1

STATUTES INVOLVED ..... 2

STATEMENT OF THE CASE ..... 2

REASONS FOR GRANTING THE WRIT ..... 9

CONCLUSION ..... 22


## INDEX TO APPENDICES


A. Note from Jury questioning clarification of Government Exhibits as to how said exhibits were applicable to Artrone Cheatham.

B. Verdict issued by the jury on June 19, 2003.

C. Courtroom proceedings of sentencing hearing held on September 23, 2003.

D. Judgment of the United States Court of Appeals for the Eleventh Circuit as to appeal of Artrone Cheatham.

E. Denial of Petition for Rehearing En Banc of Artrone Cheatham.




## TABLE OF AUTHORITIES


Apprendi vs New Jersey,
228 F.3d 792 (7thCir. 2000) ..... 12

Bonner vs Prichard,
661 F.2d 1206, 1209 (11thCir. 1981)
(en banc) ..... 10

Bourjaily vs United States,
483 U.S. 171, 182-184 (1987) ..... 13, 14, 15

Crawford vs Washington
541 U.S. ________ (2004) ..... 11, 13, 15

Dunn vs. United States,
442 U.S. 100, 60 L.Ed. 2d 743, 749 99 S.Ct. 2190 ..... 17

Edwards vs United States,
523 U.S. 5th 118 S.Ct. 1475 (1998) ..... 18

Glasser vs. United States,
315 U.S. 827, 62 S.Ct. 129, 86 L.Ed. 457 (1942) ..... 16

United States vs Alvarez,
696 F.2d 1307, 1310 (11th Cir. 1988) ..... 15

United States vs Booker,
S.Ct. 2005 WL 50108 (U.S.) ..... 13, 18

United States vs. Cannington,
729 F.2d 702, 712 (11th Cir. 1984) .....

United States vs. Cavendar,
228 F.3d 792 (7th Cir. 2000) ..... 12

United States vs. Chisholm,
73 F.3d 304, 308 (11th Cir. 1996) ..... 18

United States vs. Gonzalez,
805 F.2d 691, 694 (11th Cir. 1986) .......... 3

United States vs. Guerrero,
934 F.2d 189, 191 (11th Cir. 1991) .......... 20

United States vs. James,
590 F.2d 575 (5th Cir)(en banc) .......... 14

United States vs. King,
972 F.2d 971, 972 (11th Cir. 1992) .......... 19

United States vs. Morales,
868 F.2d 1562, 1571 (11th Cir. 1989) .......... 17

United States vs. Peel,
837 F.2d 975, 979 (11th Cir. 1988) .......... 21

United States vs. Robertson,
582 F.2d 1356 (C.A. 5th Cir. 1978) .......... 10

STATUTES:

United States Constitution [1791], Amendment VI .......... 1

U.S.C.
Title 21, 841(a)(1) .......... 2

U.S.C.
Title 21, 846 .......... 2

Federal Rules of Criminal Procedure,
Rule 12(B)(2) .......... 3

Federal Rules of Criminal Procedure,
Rule 11(e)(6) .......... 2, 11

Federal Rules of Evidence,
801(d)(2)(e) .......... 2, 11



Federal Rules of Evidence,
Rule 410 .......... 2

## PETITION FOR A WRIT OF CERTIORARI

Petitioner Artrone Cheatham respectfully petitions for a Writ of Certiorari to review a judgment of the Eleventh Circuit United States Court of Appeals.

---

## JURISDICTION

United States Supreme Court Rules 10(a), 10(c)

Date of Entry of Judgment by the Eleventh Circuit Court of Appeals: October 27, 2004

28 U.S.C. § 1254
28 U.S.C. § 1253 (should the en banc denial be so construed)

United States Constitutional Provisions --

AMENDMENT V [1791]

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

AMENDMENT VI [1791]

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining

Witnesses in his favor, and to have the Assistance of Counsel for his defence.

## OPINIONS BELOW

1. Jury verdict May 8, 2003
2. Pre-sentence Hearing/Findings September 23, 2003
3. Eleventh Circuit Court of Appeals Opinion dated August 2, 2004
4. Eleventh Circuit Court of Appeals Opinion denying Application for Rehearing En Banc dated October 27, 2004.

## STATUTES INVOLVED

U.S.C. Title 21, 841(a)(1)

U.S.C. Title 21, 846

Federal Rules of Criminal Procedure, Rule 11(e)(6)

Federal Rules of Evidence, Rule 410

Federal Rules of Evidence, Rule 801(d)(2)(e)

## STATEMENT OF THE CASE

Cheatham was arrested on 9-10-02 (Doc 72); he was arraigned on said date and an Order of Arraignment issued (Doc 72). On or about September 27, 2002, Cheatham filed his Motion in Objection to Evidence and requested a hearing (Doc 90); Cheatham filed a Motion to Sever his trial from the Co-Defendant Carter's trial (Doc 92); Cheatham filed his Motion to Dismiss the Indictment (Doc 92); Cheatham filed his Motion to Suppress (Doc 94). The Honorable Charles S. Coody issued his Recommendation of the Magistrate Judge and acknowledged (Doc 97-Pg 1) that the need for severance arises if a Defendant shows that without severance he will suffer compelling prejudice against which a trial court could offer no protection, citing



United States v. Gonzalez, 805 F.2d 691, 694 (11thCir. 1986). Cheatham filed a Supplement to Motion to Suppress (Doc 102). Cheatham filed his Objection to Recommendation of Magistrate Judge whom denied the Motion to Sever (Doc 104). Cheatham cited therein the compelling prejudice which should have required severance. Cheatham filed his Objection of the Recommendation of the Magistrate Judge on the Motion to Dismiss (Doc 105). Cheatham submitted a Brief and Memorandum of Law supporting the objections (Doc 105-Pp 11-22). This was denied (Doc 176). The Honorable Charles S. Coody, United States Magistrate Judge issued his Recommendation on Cheatham's Motion to Suppress (Doc 111), and granted Cheatham's Motion to Suppress, stating therein that the affidavit in aid of the search warrant was so fatally defective as to require suppression. The Court suppressed all evidence from the search of 2201 Wabash Drive. Cheatham filed his Motion in Limine (Doc 134). Cheatham filed a Supplement Motion to Dismiss Counts IV and V of the Indictment, which Supplement was made pursuant to Rule 12(b)(2), Federal Rules of Criminal Procedure (Doc 161-Pg 1). The Government's ex parte submission of the grand jury testimony appears at Doc 169(a). Cheatham filed his Jury Instructions (Doc 200). Cheatham filed an Amended Motion in Limine (Doc 203) on April 29, 2003. Said Motion requested exclusion of Carter's proffer statement, also Cheatham moved to exclude any statements of Carter who would not be available for cross-examination (pp. 6-7, Doc 203). Said Motion further requested that any evidence involving Wallace Salery be excluded as it pertained to a separate alleged conspiracy. Cheatham was tried separately from Carter on May 5, 2003.

At or before the trial testimony began the Honorable Reginald C. Lindsey, visiting District Court Judge, made the following docket entries based upon stipulations between the Government and Cheatham as reflected in the docket entry on Page 40 thereof, at the severed trial of Cheatham for May 5, 2003:

> "5/5/03 -- ORAL ORDER as to Artrone Cheatham granting [0-0] oral motion to Dismiss count 6 of the indictment as to Artrone Cheatham (2) (entered by Judge Reginald C., Lindsey) (sql) Entry date 05/08/03]"

The second entry is quoted as follows:

> "5/5/03 -- DISMISSAL of Count (s) on Government Motion as to Artrone Cheatham Terminated motions Counts Dismissed: Artrone Cheatham (2) count(s) 6 (sql) [Entry date 05/08/03]"

As a result of the dismissal at their instance of Counts (2) - (5) (Count 6 having been previously suppressed) of the Indictment, the Government did not introduce any evidence against Cheatham as to the physical evidence referred to in Counts 2-5 of the Indictment. Counts 2 through 5 were the physical evidence possession/sell counts alleged against the Co-Defendant Carter.

At Cheatham's severed trial, the Government attempted to prove Cheatham was involved in a conspiracy with the "Haitians". On May 7, 2003, the jury notified the Court that they were at a stalemate. On May 8, 2003, the Court declared a mistrial. On May 11, 2003, the Government then moved to try Cheatham with Carter in a joint trial (Doc 222).

The joint trial began on June 16, 2003, and concluded on June 17, 2003. At the joint trial Cheatham submitted additional motions and objections to evidence. Cheatham fled a Second Motion in Limine dated June 5, 2003 (Doc 242). Cheatham incorporated his first Motion in Limine and Supplemental Motion in Limine. Additionally, based upon the dismissal of Counts Two through Six against Cheatham (all of the physical evidence alleged as drug law violations in the Indictment), Cheatham moved in said Second Motion in Limine for affirmative instructions requesting that the Court advise the jury of said fact stipulation. Also, in paragraph 3, Cheatham moved to exclude the testimony of Wallace Salery. The trial court issued an Order conditionally granting the Second Motion in Limine and required the Government to obtain a ruling outside the presence of the jury before introducing the evidence (Doc 250). This never occurred at trial.

Cheatham objected to every exhibit pertaining to the physical evidence alleged to have been seized from Carter. The Court consistently overruled Cheatham's objections notwithstanding that the Government had stipulated the evidence in Counts 2 through 5 of the Indictment did not pertain to Cheatham.

At the joint trial, Cheatham objected to the Court's refusal to grant Special Jury Charge Number 3 for failing to include the "crack" versus "powder" instruction which was given at the first trial, which



objection the Court noted as having been preserved. TR2-R4-707-709. Cheatham advised the Court that the instruction was given at the first trial. TR2-R4-709.

After the jury retired for deliberations, the jury sent out a note which the Court read as follows:

"Court: We are on the record and I have a question, or note, from the jury, and the note reads as follows: 'We cannot come to a unanimous decision on Artrone Cheatham. We have concluded the verdict on the Defendant Carter, signed by the foreperson. What says the Government as to receipt of the verdict on Mr. Carter, before concluding their deliberation on Mr. Cheatham? as to the issue of giving an Allen charge to the jury at this time."

Brown: "Government wants Carter verdict and 11th Circuit Allen charge."

Madison: "Object to any further Allen charge. This is the second time this case has tried. The first time it was severed. They wound up with a hung jury. This time they tried my Defendant with Co-Defendant and got another hung jury. I think it's prejudicial to instruct the jury that they should find a verdict as it may impact a juror to change their mind."

Mr. Madison objected to any further Allen charge and moved to dismiss the case. (TR2-R4-173).

Mr. Madison objected to exhibits remaining before the jury as the exhibits related to Carter and not Cheatham (as previously conceded by the Government) on the grounds that the exhibits are highly prejudicial to Cheatham. (TR2-R4-790) Mr. Madison moved to exclude the exhibits from the jury's view. The trial court responded:

Court: "Request is denied. Mr. Brown, do you contend that any of the evidence that is referred to by the jury's note, specifically, Government's exhibits 3, 9, 11, 14 and 16, was supported by any of the evidence

presented by the Government?"

Brown: "I would agree that Agent Sisson testified that it was his opinion that the evidence was not linked to Mr. Cheatham." (TR2-R4-791)

The jury sent a second jury note out which stated:

Court: I have another note from the jury and I will read it so that I can ensure that it is accurate. 'We need a clarification on the following Government exhibits - 3, 9, 11, 14 and 16. These reports are on evidence presented against Jimmy Carter. We would like to know why Artrone Cheatham's name is on the "file title"'.

The Court ignored Cheatham's request for special instruction and simply advised the jury that the evidence was withdrawn from the jury's consideration in the case against Artrone Cheatham. The Court advised the jury to continue their deliberations without regard to those Exhibits. (TR2-R4-793).

The jury came back with a guilty verdict against Artrone Cheatham - 50 grams or more. (TR2-R4-795). Request for special interrogatories were denied (TR2-R4-796).

Cheatham filed a Judgement Notwithstanding the Verdict of the Jury, Alternatively, Motion for New Trial (Doc 262). Cheatham's Motion for a Judgment Notwithstanding the Verdict of the Jury, or Alternatively Motion for New Trial (Doc 262) was denied by Order dated July 6, 2003, (Doc 264).

At the pre-sentence hearing, the objections to the pre-sentence investigative report (PSI) were argued with respect to those submitted by Cheatham. Cheatham objected to the inclusion of Counts 2 through 5 in Cheatham's PSI Report by reason of the dismissal of the same by Judge Lindsey in the first trial; however, the Court nor the probation officer in preparing the report attributed any of the cocaine in Counts 2 through 5 in the Indictment against Cheatham (see Appendix C). The amounts utilized came from Salery's testimony. The court then sustained Cheatham's objection and did not utilize the drug amounts referred to in Count 2 through 5 of the testimony.

Cheatham further objected to there being no "crack" versus



"powder" instruction having been given, in that Cheatham was being charged with a conspiracy to distribute "crack" where the testimony of Salery only death with "powder" during the time of the conspiracy. Cheatham, in his PSI objections, showed that the guidelines themselves provided different sentencing ranges for "powder" versus "crack". Cheatham's objections were overruled. (See Appendix C).

Cheatham further argued that the application of guidelines in this case, where there was no prior conviction of a felony by Cheatham, with his sentence commencing at a minimum twenty-year term, represented a violation of the Eighth Amendment cruel and unusual punishment provision of the United States Constitution. Said objection was overruled (Doc 278). Cheatham's judgment in a criminal case was entered (Doc 280).

Cheatham filed his Motion for New Trial (Doc 262). Cheatham, in said Motion, raised the issues of the proffer statement's use (Doc 262, pp. 2-5); fatal variance from indictment and proof because the physical evidence counts were dismissed (Doc. 262, pp 4-6); Cheatham's fair trial rights were violated because of joinder (Doc 262, p. 9); failure to provide special instruction on "crack" versus "powder" (Doc. 262, pp 12-13) fatal variance thereof (Doc 262, p. 13); that the trial court erred in allowing Wallace Salery's testimony as it was a separate non-charged conspiracy (Doc 262, pp 14-17); that this error resulted in constructive amendment to the indictment (Doc 262, pp 16-17); that Cheatham's Fifth Amendment rights were violated as a result of Salery's testimony (Doc 262, p. 17); that Cheatham's fair trial rights were violated by the allowance of Salery's testimony (Doc 262, p 17); that the court allowed statements allegedly made by Carter in violation of Cheatham's right to confrontation and to cross-examine witnesses (Doc 262, p 21)

The Motion was denied and this appeal ensued. Each of the above arguments were raised in briefs and reply briefs on appeal and in the Application for Re-hearing. Therefore, the procedural defaults and plain error rules do not apply.

## STATEMENT OF THE FACTS

The Government sought to prove different conspiracies from the first severed trial of Cheatham to the second joint trial.

At Cheatham's first trial, the Government attempted to prove Cheatham's drug conspiracy involvement was with a group identified

as "Haitian boys". Three of the Government witnesses, Terrell Jackson, Samuel Baldwin and Abraham, attempted to create this link. However, none of the individuals testified at the second trial.

At the second trial, the Government forsook the Haitian conspiracy and chose to produce only Wallace Salery to attempt to prove, through hearsay testimony, that Cheatham was involved in the Salery conspiracy with Carter (and not the Haitians, whom the Government attempted to link Cheatham to at the first trial). It should be noted that Wallace Salery provided no testimony to the grand jury to obtain the Indictment. The Salery conspiracy was prosecuted in 1999-2000. Additionally, the cocaine and crack charged in the Indictment was seized after Salery was incarcerated.

Salery testified that he would be receiving some sort of reduction for his testimony (TR-2-V1-P28). Salery testified that Cheatham saw him two or three times by himself (TR-V1-33). However, Salery did not disclose when this occurred, pre-1999 or thereafter. Contrary to his testimony at the first trial, Salery testified that he sold Carter thirty (30) kilos and Cheatham thirty (30) kilos (TR2-V1-35). Salery testified that he was incarcerated in February 2000 (TR2-V1-107). When asked why his trial testimony differed from the statement he gave Officer Sisson in January 2003, Salery stated "...he (Sisson) caught me off guard." In the statement, Salery told Sisson that Carter received two kilos off and on for one year; only one time did somebody else come with Carter (TR2-V1-154).

Salery testified that he was part of the Flowers conspiracy but he was not convicted in the Flowers trial (TR-2-V1-174). Salery testified people who wanted to get in touch with him would page him on his beeper. His beeper number was 519-2959 (TR2-V1-191).

The only evidence used to establish this newly-alleged conspiracy with Salery was a statement that Salery attributed to the Co-Defendant Carter that when Carter allegedly bought more than one kilo of cocaine that the other one was for Cheatham, and that "they" cooked the cocaine. (At Cheatham's first trial, Salery's testimony differed; the purchases were occasional and a half kilo.)

Salery testified that he only saw Carter cook cocaine; that he never saw Cheatham cook cocaine. No testimony was presented that the cooked cocaine was part of any conspiratorial agreement between Carter and Cheatham.

Notwithstanding, the hearsay testimony used to establish conspiracy was, "they cooked cocaine." One has to assume that Salery



in using the work "they" meant Carter and Cheatham, as he did not specify Cheatham by name." Again, no facts are presented to support Salery's statement.

| | |
|---|---|
| (TR2-VI-P150) | Salery testified that Carter allegedly was the only person he let cook cocaine. |
| (TR2-VI-p161) | When asked if Carter had an organization, Salery testified, "A: I am quite sure he did, he had to have something to sell all that dope." |
| (TR2-VI-p 199) | Salery confirmed that he only allegedly sold "powder" to Cheatham in 1999. Any "crack" he allegedly sold to Cheatham was before the alleged commencement of the conspiracy. |
| (TR2-VI-P 205) | Salery testified that the "powder" was converted. He never testified how he knew Cheatham was involved in conversion, nor how, when and where converted. He testified that he never saw Cheatham convert cocaine (TR2-VI-P246). |

Salery did not know where Cheatham lived (TR2-V1-p195). There was no testimony that Carter and Cheatham shared profits. There is no testimony as to any person Cheatham allegedly sold drugs to in the second trial. There was no testimony that Salery nor Carter received any profits from Cheatham. There was no testimony that Carter shared any profits with Salery (i.e, testimony in effect was Salery sold a kilo and was paid that sum; what happened after that, Salery did not care).

## REASONS FOR GRANTING THE WRIT

I. This case requires reversal because of reference to and use of information Carter provided in his proffer meeting where said information was presented at both grand jury proceedings; more specifically in obtaining the superseding indictment alleging the conspiracy between Co-Defendants Carter and

Cheatham which added Cheatham to the Indictment.

The prohibition of the use of proffer statements was addressed in U.S. v Robertson, 582 F.2d 1356 (C.A. 5th Cir. 1978). (In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.) Commencing at Page 1364, the former Fifth Circuit addressed the prohibition against the use of proffer statement as follows:

> "Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410 render inadmissible any statement made "in connection with, and relevant to" an offer to plead guilty."
>
> "The United States Supreme Court emphasized the importance of guilty pleas and plea negotiations in Blackledge v. Allison, 431 U.S. 63, 71, 97 S.Ct. 1621, 1627, 52 L.Ed.2d 736 (1977)(note omitted):
>
> "This Court has consistently emphasized the importance of guilty pleas and the safeguards surrounding the entire process of plea negotiations, plea agreement, and plea taking. Even before the enactment of Fed.R.Crim.P. 11(e)(6) and Fed.R.Evid. 410, this Court "recogniz[ed] the inescapable truth that for plea bargaining to work effectively and fairly, a defendant must be free to negotiate without fear that his statements will later be used against him." United States v. Herman, 544 F.2d at 796, citing, United States v. Ross, 4913 F.2d 771, 775 (5th Cir. 1974). See also ABA Standards § 2.2; ALI Code § 350.7." (Emphasis added)



This Court in U.S. v. Mezzanto, 513 U.S. 196, 115 S. Ct. 797 (1995) addressed this issue but in that case upheld a waiver provision in the plea agreement that waived the provisions of Federal Rules of Evidence 410 and Federal Rules of Criminal Procedure 11(e)(6) and thus permitted use of the statements in said case. In this case, there was no waiver to allow use of the information.

II. Salery's testimony as to what Carter allegedly said about the other cocaine being Cheatham's was testimonial hearsay and prohibited from use before the grand jury and at trial.

A. Carter's statement was testimonial hearsay and prohibited from use before the grand jury and at trial.

In Crawford v. Washington, 541 U.S. _____ (2004), this Court held, at pages 25 and 26 thereof, the following:

> "...Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial". Whatever else the term covers, or at a former trial; and to police interrogations. These are the modern practices with close kinship to the abuses at which the Confrontation Clause was directed..."

B. Carter's statement did not qualify as a co-conspirator's statement as it was used against Carter to support the conspiracy charge.

Federal Rules of Evidence 801(d)(2)(e), pertains to a statement of a co-conspirator. The rule requires as a condition precedent to admissibility io the alleged statement as follows:

> "...The contents of the statement shall be considered but are not alone sufficient to establish...or the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered under (E)."
>
> The statement was offered against both Carter and Cheatham. The co-conspirator exception only allows the statement to be presented against the other alleged co-conspirator, not against the declarant himself (see Issue I).

As Salery's testimony of what supposedly told him is the only evidence of any alleged "crack" cocaine dealings; there is no independent basis for the finding of a conspiracy. Therefore, the Rule itself precludes the statement.

See also III (a) and (b) and the credibility/reliability of testimony in light of Rule 35 downward departure.

III. That the trial court violated Cheatham's right to trial by jury in sentencing Cheatham on hearsay testimony provided by Salery aattributed to the co-conspirator Carter where:

(a) the Salery testimony was not alleged in the Indictment and, therefore, could not be found as an element of the offense by the jury; and

(b) Cheatham's confrontation rights and right to cross-examine the declarant were violated.

(a) Cheatham argued these issues on appeal, more particularly at pages 32-33 of his trial. Cheatham argued that by reason that the Government dismissed the physical evidence counts against Cheatham by stipulating the counts were dismissed and had nothing to do with Cheatham that the jury, under Apprendi v. New Jersey, cited by Cheatham from United States v. Cavender, 228 F.3d 792



(7th Cir. 2000), could not find a drug quantity against Cheatham.

The jury found Carter and Cheatham guilty of conspiracy to sell 50 grams or more of crack, with no other specific amount stated in the verdict form. Cheatham had no prior felony convictions nor enhancements. The trial court attributed crack plus the kilograms of crack cocaine in amounts established by Salery's testimony.

Alternatively, the 50 grams should have been the maximum amount attributable for sentencing purposes as the sole specific amount found by a jury.

The Salery drug quantities (which Cheatham denies) were not alleged in the Indictment. This is particularly true where the physical evidence alleged in the Indictment was cocaine and crack allegedly seized from Carter in 2001 and 2002, which was over one and one-half years after Salery was incarcerated. Cheatham also objected to use of the Salery attributed drugs at sentencing. See Appendix A.

> "Pursuant to Apprendi, [HN2] in order to sentence a defendant under § 841 (b)(1)(B), instead of § 841 (b)(1)(C)'s catch-all [**6] statutory maximum of twenty years, the drug quantity must be treated as an element: charged in the indictment, submitted to a jury, and proved to a jury beyond a reasonable doubt. N2 *United States v. Angle*, 230 F. 3d 113, 2000 WL 1515159, at *10 (4th Cir. 2000), *United States v. Doggett*, 230 F. 3d 160, 2000 WL 1481160, at *3 (5th Cir. 2000), *United States v. Cavender*, 288 F.3d 792, 2000 WL 1459838, at *58 (7th Cir. Oct 3, 2000)."

According to this Court's recent case of *U.S. v. Booker*, 2005 WL 50108(U.S.) ______ S. Ct. ______, the holding of *Blakely v. Washington*, 542 U.S. ______ (2004), was extended to cases involving the Federal Sentencing Guidelines. The facts of this case with respect to sentencing are very similar to those cited in *U.S. v. Booker, id.*, pages 4 and 5 thereto. Therefore, the Salery drug amounts not being alleged in the Indictment could not be utilized as premise for conspiracy charge.

(b) In Crawford v. Washington, 541 U.S. ______ (2004), this Court held that testimonial hearsay (confession) where the declarant is unavailable to be cross-examined should be precluded as a violation

of the Confrontation Clause. The Court held, at pages 25-27 thereof, as follows:

> "...Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes."

This Court was addressing its prior acceptance of testimonial hearsay. However, Cheatham submits that the same logic holds true where the alleged declarant does not testify, and by analogy the testifying witness relaying the hearsay person who receives a reward (downward departure under Rule 35) for providing the hearsay statement of a non-testifying co-defendant as occurred against Cheatham. Reliability is destroyed in such a scenario much like testimonial statements. The reward itself taints the hearsay exception. The confrontation clause should prevail.

Additionally, this Court in Crawford v Washington, 541 U.S. ___(2004), rejected Bourjaily v. United States, 483 U.S. 171, 182-184 (1987), which had permitted hearsay testimonial statements. Therefore, it was error for the Eleventh Circuit and Trial Court to allow the conspiracy to stand without additional evidence of a conspiracy. In addressing the co-conspirator exception this Court held in Crawford v Washington the following:

> ' "[77] It is clear that our cases consistently have viewed an accomplice's statements that shift or spread the blame to a criminal defendant as falling outside the realm of those "hearsay exception[s] [that are] so trustworthy that adversarial testing can be expected to add little to [the statements'] reliability." White, 502 U.S., at 357..."
>
> "[82] The Commonwealth correctly notes that "the presumption of unreliability that attaches to co-defendant's confessions...may be rebutted." Lee, 476 U.S. at 543. We have held, in fact, that any inherent unreliability that accompanies co-conspirator statements made during the course and



> in furtherance of the conspiracy is per se rebutted by the circumstances giving rise to the long history of admitting such statements. See Bourjaily v. United States, 483 U.S. 171, 182-184 (1987). Nonetheless, the historical underpinnings of the Confrontation Clause and the sweep of our prior confrontation cases offer one cogent reminder. It is highly unlikely that the presumptive unreliability that attaches to accomplices' confessions that shift or spread blame can be effectively rebutted when the statements are given under conditions that implicate the core concerns of the ex parte affidavit practice -- that is, when the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing."'

Cheatham argued to the Eleventh Circuit that it should uphold its prior dictates stated in U.S. v Alvarez, 696 F.2d. 1307, 1310 (11Cir. 1988) and dispense with the rationale of Bourjaily v. U.S. (i.d.). Cheatham argued:

> "[5] Under United States v. James, 590 F.2d 575 (5th Cir.) (en banc), cert. denied, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), the trial judge must determine the admissibility of a co-conspirator's statements by deciding whether the government has offered substantial independent evidence of a conspiracy sufficient to go to the jury..." U.S. v. Alvarez, 696 F.2d 1307, 1310 (11th Cir 1988).

In this case there was no evidence of a conspiracy involving Carter and Cheatham without Salary's testifying as to the alleged Carter statement which was hearsay. The U.S. v. James logic should be re-instated in lieu of the rejection of Bourjaily in Crawford v. Washington.

This Court in Crawford v Washington i.d. failed to address whether the Sixth Amendment right to confrontation precluded co-conspirator statements as exceptions to hearsay rule (but this Court

hinted that such statements may survive). Prior to Bourjaily v U.S. (i.d.) this Court held in Glasser v United States, 315 U.S. 827, 62 S.Ct. 129, 86 L.Ed 457 (1942) the following, concerning a co-conspirator statement:

> [14] Glasser contends that such statements constituted inadmissible hearsay as to him and that Stewart forewent this obvious objection lest an objection on behalf of Glasser alone leave with the jury the impression that the testimony was true as to Kretske. The Government attacks this argument as unsound, and, relying on the doctrine that the declarations of one conspirator in furtherance of the objects of the conspiracy made to a third party are admissible against his co-conspirators, Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429, contends that the declarations of Kretske were admissible against Glasser and hence no prejudice could arise from Stewart's failure to object. However such declarations are admissible over the objection of an alleged co-conspirator, who was not present when they were made, only if there is proof aliunde that he is connected with the conspiracy. Minner v. United States, 10 Cir., 57 F.2d 506; and see Nudd v. Burrows, 91 U.S. 426, 23 L.Ed. 286. Otherwise hearsay would lift itself by its own bootstraps to the level of competent evidence."

Cheatham respectfully submits that the reliability standard as to Salery's testimony was lost with the reward of the downward departure rendering the alleged hearsay statement of Carter provided by Salery as unreliable. This bootstrapped Salery's testimony into competent evidence as suggested by Glasser, i.d.

Additionally, if the co-conspirator exception is not held to violate the Sixth Amendment, then Cheatham urges this Court to re-adopt Glasser v U.S., i.d. as the standard in this case as other than the hearsay statement attributable to Carter, who did not testify, there was no other evidence of a conspiracy.

IV. The Trial Court and the Eleventh Circuit ignored the



compelling prejudice which arose from the joint trial of Cheatham and Carter where the Government had stipulated that none of the physical evidence in the case applied to Cheatham particularly where the Trial Court refused to sustain Cheatham's objections to admission of the Carter physical evidence against Cheatham.

> "Entitlement to severance arises if a defendant shows that without severance he will suffer "compelling prejudice against which a trial court could offer no protection."
> United States v. Gonzales, 804 F.2d 691, 694 (11th Cir. 1986)(quoting United States v. Magdanieal-Mora, 746 F.2d 715, 718 (11th Cir. 1984)). See also United States v. Morales, 868 F.2d 1562, 1571 (11th Cir. 1989).

The Government paraded the physical evidence in front of the jury in this joint trial, notwithstanding that at the severed trial the Government dismissed the possessory Counts II-V against Cheatham; the Government stipulated Cheatham had nothing to do with said evidence yet the trial court still refused to grant Cheatham's objections to the evidence and permitted the evidence to be offered against Cheatham without requested instructions. After being hung, the jury found Cheatham guilty because his name was on the Carter evidence. (See jury note and jury's subsequent action, Appendix A.) This emphatically proved the prejudice resulting from the joint trial.

V. Cheatham's due process rights under the Fifth Amendment were there was a fatal variance between indictment alleging conspiracy to sell crack cocaine and proof of allegedly Salery's sale of powder cocaine, particularly where the second trial Judge refused Cheatham a jury charge on the difference between crack and powder where the instruction was provided for Cheatham in the first, severed trial.

In Dunn v United States, 442 U.S. 100, 60 L.Ed 2d 743, 749, 99 S. Ct. 2190, this Court held:

> "[2] A variance arises when the evidence aduced at trial establishes facts different from those alleged in

> an indictment. Berger v. United States, 295 US 78, 79 L Ed 1314, 55 S Ct 629 (1935)....
>
> ...[3,4] To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process. Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused. See Eaton v. Tulsa, 415 US 697, 698-699, 39 L Ed 2d 693, 94 S Ct 1228 (1974) (per curiam); Garner v. Louisiana, 368 US 157, 13-164, 7 L Ed 2d 207, 82 S Ct 248 (1961); Cole v Arkansas, 333 US 196, 201, 92 L Ed 644, 68 S Ct 514 (1948); De Jonge v Oregon, 299 US 353, 362, 81 L Ed 278 57 S Ct 255 (1937)."

The evidence clearly stated that Salery had no dealings with Cheatham in crack cocaine during the period of the alleged conspiracy. Therefore, a fatal variance occurred between the Indictment and proof at trial. This violated Cheatham's Fifth Amendment rights to due process.

(A) Congress in enacting the sentencing guidelines acknowledged the difference between crack and cocaine powder.

Even assuming the hearsay statement attributing the other cocaine Carter picked up from Salery to be true (which Cheatham denies), Salary testified that he only sold powder to Cheatham during the conspiracy. He testified that he never saw Cheatham cook cocaine. Salary provided no facts to reflect that Cheatham knew Carter cooked cocaine for Salary. The conduct of Carter was not foreseeable by Cheatham. The Eleventh Circuit previously acknowledged that the sentencing guidelines created a distinction between "crack" and "powder" cocaine.

> (a) "King argues that the wide disparity in punishments for crimes involving crack cocaine and those involving powder cocaine violates the Constitution's guarantee of equal protection..."...We



> readily conclude that the sentencing scheme in question withstands scrutiny under the rational basis standard. The fact that crack cocaine is more addictive, more dangerous, and can be sold in smaller quantities than powder cocaine is sufficient reason for Congress to provide harsher penalties for its possession, United States v. Watson, 953 F.2d 895, 898 (5th Cir.), cert denied, – U.S. –, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992). See also United States v. House, 939 F.2d 659, 664 (8th Cir. 1991); United States v. Thomas, 900 F.2d 37, 39 (4th Cir. 1990); United States v Cyrus, 890 F.2d 1245, 1248 (D.C. Cir. 1989).
> U.S. v King, 972 F.2d 971, 972 (11th Cir. 1992)."

It is clear that the intent of Congress in providing harsher penalties under the sentencing guidelines for "crack" cocaine which is treated more severely than "powder" cocaine evidences the intent of Congress to distinguish the two.

This Court addressed a similar issue in Edwards v. United States, 523 U.S. 5th 118 S.Ct. 1475 (1998). In the Edwards case, this Court noted the indictment was for cocaine <u>or</u> crack (emphasis added). Additionally, this Court noted that the Federal Sentencing Guidelines allowed the Judge and not the jury to resolve this issue. In this case, Cheatham was only charged with conspiracy to distribute crack. In light of U.S. vs. Booker, and as distinguished by the facts of this case, Edwards is distinguishable even if still applicable (i.e., in Edwards the judge made the decision as to amount of drugs, not the jury). In Cheatham's case, the Judge decided this issue.

(B) There was no testimony Cheatham converted powder to crack nor was there testimony which would make this inference forseeable by Cheatham.

An Eleventh Circuit case, U.S. v Chisholm, 73 F.3d 304 (11th Cir. 1996), dealt with the issue of "powder" cocaine's conversion to "crack" cocaine for sentencing purposes, the Court held, at page 308, the following:

> "In a recent interpretation of the amended U.S.S.G. § 1B1.3 and its commentary, this circuit held that "defendants are only accountable for [co-conspirator] conduct that was reasonably foreseeable and within the scope of the criminal activity that the defendant agreed to undertake." United States v. Reese, 67 F.3d 902, 906-08 (11th Cir. 1995). Thus, even though a co-conspirator may reasonably foresee other criminal acts, he is not accountable for those acts if they were not part of the scope of the criminal activity he agreed to undertake. Id. at 907."
>
> "In the present case, there is no evidence that the conversion to or use of crack cocaine was reasonably foreseeable by Chisholm or that it was part of the scope of criminal activity that he agreed to undertake. In both drug transactions for which Chisholm is charged, the evidence shows that Chisholm merely assisted with the procurement of powder cocaine."

There was no evidence to suggest Cheatham was aware of the conversion of powder to crack. Salery testified that Carter allegedly converted his (Salery's cocaine) with there being no reference to Cheatham.

(C) A constructive amendment to the Indictment occurred in the jury finding that Cheatham engaged in a conspiracy to sell crack cocaine.

Again, there was no evidence causally linking Cheatham to crack cocaine during the alleged period of the conspiracy. There was no evidence of Cheatham converting powder he allegedly purchased from Salary into crack. Finding Cheatham guilty of conspiracy to sell crack where there was no evidence of Cheatham's participation nor conversion of "powder" to "crack" represented a constructive amendment to the Indictment.

> "[11] We have explained that "[a] constructive



> amendment to the indictment occurs where the jury instructions so modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged in the indictment." United States v. Poarch, 878 Fd 1355, 1358 (11th Cir. 1989). A constructive amendment to the indictment is reversible error per se. Id (citing United States v. Peel, 837 F.2d 975, 979 (11th Cir. 1988)."

(D) The only evidence (which Cheatham denies) at best supported separate conspiracies (i.e., Salery sold to Carter (buyer/seller) and Salery sold to Cheatham (buyer/seller).

Additionally, without Carter's statements, the only testimony was if one believes Salery, is that Salery sold to Carter and Salery sold to Cheatham. This is evidence of separate conspiracies. Salary provided no evidence as to where Cheatham lived; whom Cheatham may have sold to, or otherwise.

> "Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946 (holding that if at trial the government produces evidence that each defendant has a conspiratorial relationship with a single outside person, but fails to show that the defendants also were aware of and conspired with each other, the government has proved only multiple individual conspiracies rather than one agreement encompassing all defendant)..." U.S. vs Guerrero, 934 F.2d 189, 191 (11th Cir. 1991).

U.S. vs. Guerrero, i.d. cited Kotteakos, i.d.. In Kotteakos there were thirty-two different persons fraudulently obtaining loans from one person. This Court held the facts supported separate conspiracies, not one conspiracy. With all due respect, if Salery's testimony is allowed and considered competent then that is all the facts proved, separate conspiracies and nothing more.

## CONCLUSION

First, the Government impermissibly used statements from a proffer session of one of the alleged co-conspirators to obtain both indictments including the superseding indictment alleging conspiracy between Carter and Cheatham. Then the Government used the testimony of Wallace Salery, a person having already been convicted in a separate conspiracy to prove their case. This person received a Rule 35 downward departure for providing testimony, notwithstanding that the only evidence of a conspiracy was this same person testifying as to a hearsay statement attributed to the alleged co-conspirator Carter whom did not testify. Cheatham's right to trial by jury and his right to confrontation of witnesses was violated.

Additionally, the judge and not the jury found the amounts that Cheatham was sentenced under utilizing amounts Salery testified to, while not utilizing any amounts alleged in the Indictment, as the Government had stipulated that said evidence had nothing to do with Cheatham. In fact, the counts were dismissed as to Cheatham.

There was a fatal variance between proof and the Indictment, as well as an impermissible constructive amendment to the Indictment resulting therefrom which violated Cheatham's due process rights under the Fifth Amendment.

Finally and alternatively, the only specific amount of cocaine the jury found was 50 grams or more. Therefore, if the above arguments are rejected, then Cheatham respectfully submits that all he could be sentenced to would be a conspiracy to sell 50 grams (21 U.S.C. 846).

Cheatham prays that this case be reversed and his case dismissed for the above reasons.

Respectfully submitted,

DONALD G. MADISON
Attorney for Artrone Cheatham
418 Scott Street
Montgomery, Alabama 36104
Telephone (334) 263-4800

App.

APPENDIX B

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA, )
)
)
vs. ) CR. NO. 02-07-N
)
ARTRONE CHEATHAM, )
a/k/a "MOOCHIE" )

**VERDICT**

1. We, the Jury, find the Defendant Artrone Cheatham:

_________ Not Guilty
___X___ Guilty*

as charged in Count One of the superseding indictment.

[NOTE: If you find the Defendant "Guilty" as charged in Count One, proceed to paragraph 1(a) below. If you find the Defendant "Not Guilty" as charged in Count One, you need not consider paragraph 1(a) below, but should proceed to date and sign the verdict.].

1(a). We, the Jury, having found the Defendant guilty of the offense charged in Count One, further find with respect to that Count that he conspired to possess with intent to distribute the following controlled substance in the amount shown (place an X in the appropriate box):

Cocaine base ("crack" cocaine)--
(I) Weighing 50 grams or more ☒*
(ii) Weighing 5 grams or more ☐
(iii) Weighing less than 5 grams ☐.

SO SAY WE ALL.

_______________________________**
Foreperson

Date: 19 June 03*

* Information on original document handwritten
**Name of the Foreperson is intentionally omitted for privacy purposes.

App.

APPENDIX C

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

HON.MARK E. FULLER JUDGE
AT MONTGOMERY , ALABAMA

DATE COMMENCED 9-23-03* AT 11:03*, AM/PM

DATE COMPLETED 9-23-03* AT 11:58*, AM/PM

UNITED STATES OF AMERICA )
)
vs. ) CRIMINAL
) CASE NO. 02--7-N
ARTRONE CHEATHAM )
)

---

PLAINTIFF APPEARANCES: DEFENDANT

Todd A. Brown )Donald Gordon Madison

---

COURT OFFICIALS PRESENT

Ridge Lent - Courtroom Deputy Clerk Doug Mathis - P.O.*
James R. Dickens - Official Court Reporter
Jerusha Adams - Law Clerk*

===

COURTROOM PROCEEDINGS

(XX) COURT PROCEEDING - SENTENCING HEARING

Objections to P.S.I. Report

1. Inclusion of Counts 2-5 as to Carter in Cheatham's P.S.I. Report. (United States it will not attribute evidence in its 2-5 to Cheatham) : Sustained

3. Object to crack cocaine vs powder being attributed to Cheatham by way of testimony of Wallace Sallery.
OVERRULED

4. Defendant's objection is that application of the guidelines in this case is cruel & unusual punishment
Sentence imposed*
* Information handwritten on original document

App.

APPENDIX D

United States Court of Appeals
For the Eleventh Circuit

---

No. 03-13602

---

District Court Docket No.
02-00007-CR-N-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JIMMY CARTER, JR.,
ARTRONE CHEATHAM, a.k.a. Moochie,

Defendants-Appellants.

---

Appeal from the United States District Court
for the Middle District of Alabama

---

JUDGMENT

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered: August 2, 2004
For the Court: Thomas K. Kahn, Clerk
By:Jackson, Jarvis

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

No. 03-13602

---

D.C. Docket No. 02-00007-CR-N-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JIMMY CARTER, JR.,
ARTRONE CHEATHAM, a.k.a. Moochie,

Defendants-Appellants.

---

Appeals from the United States District Court
for the Middle District of Alabama

---

(AUGUST 2, 2004)

Before CARNES, HULL and HILL, Circuit Judges

PER CURIAM:

Jimmy Carter, Jr. and Artrone Cheatham were convicted by a federal jury of conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 846. Carter was also convicted on four counts of possession and of possession with the intent to distribute cocaine powder and crack cocaine, in violation of 21 U.S.C. §§ 844(a) and 841(a)(1). In their appeal, Carter and Cheatham raise a total of seventeen issues, only one of which merits any discussion.

Carter asserts that this proffer statement was used against him in grand jury proceedings in order to obtain a conspiracy charge in the superseding indictment. After Carter raised this issue in an untimely manner in the district court, the court directed the government to file, ex parte, any grand jury testimony relating to the proffer statement for the court's in camera review. Carter then filed a motion in the district court "to allow defendant to review grand jury minutes of the original indictment and supersecious (sic) indictment and to allow defendant to file a late motion to dismiss." The district court denied Carter's motion, stating that "[a]fter carefully reviewing the transcripts, the court concludes that the motion for leave to file a motion to dismiss would be futile because the substantive basis for the defendant's motion to dismiss the indictment is erroneous."

Carter appeals the district court's denial of his untimely motion and contends that his indictment should have been dismissed. We review the denial a motion to dismiss an indictment only for abuse of discretion. United States v. Waldon, 363 F. 3d 1103, 1108 (11th Cir. 2004); United States v. Pielago, 135 F.3d 703, 707 (11th Cir. 1998). We review the district court's underlying factual determinations only for clear error.

Carter's ultimate conviction by a jury which found him guilty beyond a reasonable doubt weighs heavily against his claim that he was prejudiced by the grand jury proceedings. See United States v. Garate-Vergara, 942 F.2d 1543, 1550 (11th Cir. 1991)("Conviction beyond a reasonable doubt without the use of the tainted testimony or alleged misconduct at trial makes it highly improbable that the grand jury indictment was based on insufficient probable cause.").

Moreover, Carter's pre-indictment proffer statement itself was not put before the grand jury. The transcripts show that the only testimony dealing with Carter's agreement to cooperate with the government did not include any proffer statements he had made. The grand jury did hear that Carter had agreed to give the government information about Montgomery, Alabama area drug suppliers "in exchange for judicial consideration in his case," and was told that the agreement was terminated when the government found out that Carter was still selling drugs. Because Carter's proffer statement itself was not used before the grand jury, and because he was found guilty beyond a reasonable doubt by a petit jury that heard nothing about any agreement or attempted agreement between Carter and the government, we cannot say that the district court abused its discretion when it dismissed Carter's untimely motion as unfounded.

Carter and Cheatham's other sixteen grounds for appeal are without merit.

Therefore, the convictions are AFFIRMED.

App.

APPENDIX E

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

---

No. 03-13602-DD

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JIMMY CARTER, JR.,
ARTRONE CHEATHA, a.k.a. Moochie,

Defendants-Appellants.

---

On Appeal from the United States Disrict Court for the
Middle District of Alabama

---

ON PETITION(S) FOR REHEARING AND PETITION (S) FOR REHEARING EN BANC

(Opinion ________________, 11th Cir., 19__, ____F. 2d____).

Before: CARNES, HULL and HILL, Circuit Judges.

PER CURIAM:

The Petition (s) for Rehearing are DENIED and no member of this panel nor other Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc (Rule 35,Federal Rules of Appellate Procedure; Eleventh Circuit Rule 35-5), the Petition (s) for Rehearing En Banc are DENIED.

ENTERED FOR THE COURT:

______________________________
UNITED STATES DISTRICT JUDGE

ORD-42 (6/95)