# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| JIMMY CARTER, JR., | ) | |
| | ) | |
| Defendant/Movant, | ) | |
| | ) | |
| vs. | ) | CASE NO. 05cv1016-F |
| | ) | (CR NO. 02-07-N) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## UNITED STATES'S RESPONSE TO § 2255 MOTION

COMES NOW the United States of America, by and through its attorney, Leura Garrett Canary, United States Attorney, and, in compliance with this Court's order, responds to Defendant/Movant Jimmy Carter, Jr.'s Motion Under § 2255 to Vacate, Set Aside, Or Correct Sentence By a Person In Federal Custody, as follows:

## I. PROCEDURAL HISTORY AND RELEVANT FACTS

On January 29, 2002, a grand jury for the Middle District of Alabama returned a four-count indictment against Defendant/Movant Jimmy Carter, Jr. ("Carter"). See Exhibit A, the indictment. Count 1 of the indictment charged that, on or about July 25, 2001, in Montgomery County, Alabama, Carter knowingly and intentionally possessed with intent to distribute approximately 84.28 grams of cocaine hydrochloride, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1). Count 2 charged that, on or about July 25, 2001, in Montgomery County, Alabama, Carter knowingly and intentionally possessed with intent to distribute approximately 28.42 grams of cocaine hydrochloride, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1). Count 3 charged that, on or about January 14, 2002, in Elmore County, Alabama, Carter knowingly and intentionally possessed with intent to

distribute 50 grams or more of cocaine base, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1).  Count 4 charged that, on or about January 14, 2002, in Elmore County, Alabama, Carter knowingly and intentionally possessed with intent to distribute 500 grams or more of cocaine hydrochloride, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1).

On August 15, 2002, a grand jury for the Middle District of Alabama returned a six-count superseding indictment against Carter and co-defendant Artrone Cheatham, a/k/a/, "Moochie." See Exhibit B, the superseding indictment.  Count 1 of the superseding indictment charged that, from in or about January, 1999, and continuing up to and including January, 2002, the exact dates being unknown to the grand jury, in Montgomery and Elmore Counties, Carter and Cheatham knowingly and intentionally combined, conspired, confederated, and agreed together and with persons both known and unknown to the grand jury to distribute and possess with intent to distribute 50 grams or more of a mixture or substance containing cocaine base, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. Counts 2-6 realleged the charges in the original indictment of January 29, 2002.  Count 6 of the superseding indictment related solely to Cheatham.

Carter filed a motion to suppress evidence.  On July 12, 2002, the Magistrate Judge recommended that his motion be granted.  (R1:47.)  This Recommendation was based on a finding that the government had failed to demonstrate that the evidence was the product of an illegal seizure of Carter's person, after the completion of a legitimate traffic stop.  On January 7, 2003, this Court referred Carter's motion to suppress back to the Magistrate Judge for further proceedings and a supplemental Recommendation.  (R2:141.)  On February 25, 2003, an

2

evidentiary hearing was conducted, and on March 18, 2003, the Magistrate Judge issued a

Supplemental Recommendation against suppression. (R3:174.) This Recommendation found

that the government had cured the evidentiary deficiency by demonstrating that Carter had

consented to the pat-down search that resulted in a seizure of narcotics from his person.

(R3:174:7.) Carter, through counsel, filed objections to the Supplemental Recommendation.

(R3:182.) The objection did not dispute the basic facts of the traffic stop, but questioned whether

Carter's consent to be searched was voluntary. (R3:182:5.) On April 17, 2003, this Court

adopted the Recommendation and denied Carter's motion to suppress. (R3:188.)

On March 31, 2003, the government filed a notice of information to establish a prior

conviction for a drug felony (possession of a controlled substance) against Carter for purposes of

21 U.S.C. § 851. (R3:181.)

Carter and Cheatham were tried before a jury on June 16, 2003. The government had

previously dismissed Count 6 against Cheatham. Wallace Salery, a cooperating defendant,

testified at trial that he had provided approximately 60 kilograms of cocaine to Carter during a

one year period, and that half of this amount was given to Cheatham. (R16:27-28, 35.) On June

19, 2003, they were convicted on counts 1-2, and 4-5. (R4:253.) Although Carter was not

convicted as charged in Count 3, he was convicted of the lesser included offense of possession of

a controlled substance. (R4:253.)

A presentence investigation report was issued by the U.S. Probation Office. The report

credited Carter with the 60 kilograms of cocaine that Salery had sold to him. See PSI, at ¶ 20.

The PSI again used Salery's testimony to credit Carter with at least 30 kilograms of cocaine,

which placed Carter within the maximum offense level of 38. See PSI, at ¶ 26. The report

contained a detailed chronicle of Carter's offense and criminal history. The Probation Officer assessed Carter one point for each of three misdemeanors, even though he did not receive "a term of probation of at least one year or a term of imprisonment of at least thirty days." See U.S.S.G. § 4A1.2(c); PSI, at ¶ ¶ 43-45. The report concluded that Carter's total criminal history points of 14 placed him within Category VI. See PSI at ¶ 50. The resulting guideline sentencing range was 360 months to life. See PSI at ¶ 71.

Carter's sentencing hearing was held on September 23, 2003. See Exhibit C, a transcript of the sentencing hearing. Maurice Bell, counsel for Carter, voiced general objections to the U.S. Sentencing Guidelines, and informed the Court that his research had not revealed any mistakes in the PSI. Exhibit C, at 2-3. The Court asked Carter whether he had reviewed the PSI, and Carter responded that he had. Id. at 3. The Court also directly asked Carter whether had "any objections to any of the content of the presentence report," and Carter responded that he did not. Id. The Court then adopted the factual statements in the report, stated that Carter's offense level was 38, and that his criminal history category was VI. Id. The Court then sentenced Carter to concurrent terms of 360 months on Counts 1, 2, and 4, with additional concurrent terms of 24 months on Count 3 and 120 months on Count 5. Id. at 5. Judgment was entered on September 29, 2003. (R5:279.)

Carter appealed his convictions to the United States Court of Appeals for the Eleventh Circuit. Donald Madison filed a joint brief which raised numerous issues on behalf of Carter and Cheatham. See Exhibit D, Issue Statement excerpted from Brief of Appellants. On August 2, 2004, the Eleventh Circuit affirmed this Court's judgment in an unpublished decision. See Exhibit E, a copy of the Eleventh Circuit decision in this case. The opinion stated that the only

issue worthy of discussion was Carter's claim that he was prejudiced during the grand jury proceedings that resulted in the superseding indictment against him. Exhibit E, at 2-4. After explaining why that issue was due to be dismissed, the decision stated that each of the other 16 issues were without merit. Id. at 4. Counsel filed a petition for rehearing en banc, which was denied on October 27, 2004.

Carter received a copy of the Order denying the rehearing en banc via a letter dated November 15, 2004. See Affidavit of Donald Madison, Exhibit 5. The letter also informed Carter that he needed to decide whether to pursue a Writ of Certiorari to the United States Supreme Court, and of the cost associated with such action. In a letter dated January 14, 2005, Madison referred to a recent telephone conversation with Carter, and informed Carter that his failure to either alert Madison in a timely fashion of any desire to pursue additional legal recourse, or to pay for the filing of a petition on his behalf, was taken as confirmation that he did not wish to apply for a Writ of Certiorari. See Affidavit of Donald Madison, Exhibit 6. Madison also reminded Carter that he had through January 25, 2005, to file a Petition for a Writ of Certiorari to the United States Supreme Court. Id. Finally, Madison informed Carter that he would file a motion under 28 U.S.C. § 2255 on his behalf. Id.

On January 24, 2005, Madison filed a Motion to Vacate, Correct, of Set Aside Sentence in this Court on Carter's behalf. See U.S.D.C. No. 05cv61, Doc. #1. In a letter dated May 25, 2005, Carter requested that Madison resign from his case and withdraw the 28 U.S.C. § 2255 motion. See Affidavit of Donald Madison, Exhibit 4. Madison complied with this request on June 9, 2005. See U.S.D.C. No. 05cv61, Doc. #3. The motion to withdraw was granted on August 16, 2005. See U.S.D.C. No. 05cv61, Doc. #4.

Carter filed this Motion to Vacate, Set Aside or Correct Sentence on October 17, 2005. On October 31, 2005, this Court entered an order directing the United States to respond within thirty days. The United States sought and received an extension of time to respond to Carter's claims, and now files this response to the § 2255 motion.

## II. CLAIMS RAISED IN THE § 2255 MOTION

As far as the United States can discern, Carter raises the following issues in his § 2255 motion:

1.     Whether drug quantity is an essential element of 21 U.S.C. § 841(a)(1) that must be charged in an indictment and proven to a jury beyond a reasonable doubt;

2.     Whether he was detained for more than 45 minutes in violation of the Fourth Amendment to the United States Constitution during a routine traffic stop;

3.     Whether this Court lacked jurisdiction to impose an enhanced sentence due to the government's failure to give notice of its intent to do so, as required by 21 U.S.C. § 851, and where counsel failed to challenge the calculation of his criminal history points;

4.     Whether counsel provided ineffective assistance for failing to challenge and object to the factual statements in the presentence investigation report;

5.     Whether the indictment was fatally defective for failure to charge that Carter participated in a conspiracy in violation of 21 U.S.C. § 846;

6.     Whether Carter's Sixth Amendment right to a trial by jury was violated under United States v. Booker, and whether counsel provided ineffective assistance for failing to amend and argue Booker while direct appeal of the case was pending;

7.     Whether counsel was ineffective for failing to file a timely motion to suppress evidence; and,

8.     Whether the indictment was fatally defective for failure to charge that Carter had actual or constructive possession of a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

## III.  RESPONSE TO CLAIMS FOR RELIEF

**A.      Carter Has Met The One-Year Statute Of Limitations Deadline For
        The Filing of Claims Under 28 U.S.C. § 2255.**

The United States notes at the outset that Carter has filed his motion in a timely manner

under paragraph six of 28 U.S.C. § 2255, which provides a one-year period of time within which

to file a motion under the rule.  The applicable provision in this case requires that a movant file

his § 2255 motion within one year from "the date on which the judgment of conviction became

final."

The Eleventh Circuit Court of Appeals has held that a judgment of conviction becomes

final for someone who appeals to an appellate court when the time for seeking certiorari review

in the Supreme Court expires.  See Kaufman v. United States, 282 F.3d 1336, 1337-39 (11th Cir.

2002).  The Eleventh Circuit denied Carter's request for the rehearing en banc on October 27,

2004.  That began a 90-day period of time to petition for certiorari review.  Close v. United

States, 336 F.3d 1283, 1286 (11th Cir. 2003).  Carter's 90 days expired on January 25, 2005, and

this is the date on which his conviction became final.   Thus, his filing of this § 2255 motion

within one year of January 25, 2005, renders this motion timely.

**B.      The Substantive Issues in Carter's Motion Are Procedurally Defaulted
        And Not Properly Considered In This § 2255 Proceeding Because They
        Could Have Been Raised On Direct Appeal, But Were Not, And Carter Has
        Failed To Demonstrate Cause And Prejudice To Overcome These Defaults.**

The legal issues raised by Carter in his § 2255 motion are barred from this Court's review

because they could have been, but were not, raised on direct appeal.  Because Carter did not raise

his claims on direct appeal, however, they are barred in this collateral proceeding, unless he can

show cause and prejudice to overcome the procedural bar.  A motion under § 2255 cannot be

used as a substitute for appeal, <u>Burke v. United States</u>, 152 F.3d 1329, 1331 (11th Cir. 1998), and

claims not raised on direct appeal that could have been are generally barred from review in §

2255 proceedings, <u>McCoy v. United States</u>, 266 F.3d 1245, 1258 (11th Cir. 2001).  In <u>Mills v.</u>

<u>United States</u>, 36 F.3d 1052 (11th Cir. 1994), the Eleventh Circuit succinctly summarized the law

concerning procedural default as follows:

> Generally speaking, an available challenge to a criminal conviction or
> sentence must be advanced on direct appeal or else it will be considered
> procedurally barred in a [Section] 2255 proceeding....  A ground of error is usually
> "available" on direct appeal when its merits can be reviewed without further
> factual development....  When a defendant fails to pursue an available claim on
> direct appeal, it will not be considered in a motion for [Section] 2255 relief unless
> he can establish  cause for the default and actual prejudice resulting from the
> alleged error....  Alternatively, under the fundamental miscarriage of justice
> exception, "in an extraordinary case, where a constitutional violation has probably
> resulted in the conviction of one who is actually innocent, a federal habeas court
> may grant the writ even in the absence of a showing of cause for the procedural
> default....

<u>Id</u>. at 1055-56 (internal citations omitted).  <u>See</u> <u>also</u> <u>McCoy v. United States</u>, 266 F.3d at 1258

("A claim not raised on direct appeal is procedurally defaulted unless the petitioner can establish

cause and prejudice for his failure to assert his claims on direct appeal.").  The burden of

demonstrating cause and prejudice or a miscarriage of justice is on the movant.  <u>See</u>, <u>e.g.</u>,

<u>Bousley v. United States</u>, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally

defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if

the defendant can first demonstrate either 'cause' and actual 'prejudice,'... or that he is 'actually

innocent[.]' ").

Carter has offered nothing to this Court as cause to overcome the procedural default.

Therefore, his legal claims should be dismissed on procedural grounds.

C.    **Carter's Legal Claims Are Without Merit.**

Carter's motion contains various claims related to the sufficiency of the indictment against him, the denial of his motion to suppress evidence, the use of prior convictions at his sentencing, and whether his sentence violated United States v. Booker, 543 U.S. ___, 125 S.Ct. 738 (2005). "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations." Stephens v. United States, 14 F.Supp.2d 1322, 1334 (N.D. Ga. 1998), quoting United States v. Guerra, 588 F.2d 519, 520-21 (5th Cir.1979). "[I]n this circuit, as well as in the Supreme Court, when a § 2255 petitioner sets out detailed factual allegations ... the petitioner is entitled to a hearing unless the motion and the files on record conclusively show the petitioner is entitled to no relief.... Typically, this circuit has found some form of corroboration to a petitioner's allegations before requiring a hearing." Potts v. Zant, 638 F.2d 727, 751 (5th Cir. 1981)(citations omitted).[1]  In the event this Court does not find that Carter's legal claims to be procedurally barred, the following analysis demonstrates why they should be dismissed.

1.    **The superseding indictment against Carter was sufficient.**

Claims 1, 3, and 8 of Carter's motion charge that the superseding indictment against him was defective due to its failure to (a) charge him with responsibility for 60 kilograms of cocaine; (b) charge that he "participated" in a conspiracy in violation of 21 U.S.C. § 846; and, (c) charge that he actually or constructively "possessed" a controlled substance in violation of 21 U.S.C. § 841(a)(1).

(a) The drug quantity upon which Carter was charged and sentenced was based on, inter

---

[1]  In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit rendered prior to the close of business on September 30, 1981.

alia, trial testimony concerning Wallace Salery's sales of cocaine to Carter.  See PSI, at ¶ 20.

Drug quantity determinations require a preponderance of evidence.  See United States v.

Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005), cert. denied 125 S.Ct. 2935 (2005) ("When a

defendant objects to a factual finding that is used in calculating his guideline sentence, such as

drug amount, the government bears the burden of establishing the disputed fact by a

preponderance of the evidence.") The record shows that this standard was satisfied by trial

testimony.  This Court correctly credited Carter with his purchases of cocaine from Salery.

Therefore, this issue is without merit and must be dismissed.

(b)  Carter claims that the indictment failed to allege that he "participated" in a conspiracy

in violation of 21 U.S.C. § 846.  "A Section 846 indictment is sufficient if it alleges a conspiracy

to distribute drugs, the time during which the conspiracy was operative and the statute allegedly

violated, even if it fails to allege or prove any specific overt act in furtherance of the conspiracy."

United States v. Benefield, 874 F.2d 1503, 1506 (11th Cir. 1989).  The superseding indictment

under which Carter was convicted charged that he knowingly and intentionally acted to distribute

and possess with intent to distribute cocaine base.  Therefore, it met this standard for sufficiency.

See Exhibit B.

(c)  Carter also claims that the indictment failed to allege that he actually or constructively

possessed the controlled substances discovered at 304 Payson Road.  A conviction under section

841 requires the government to prove that the defendant possessed a controlled substance

knowingly and willfully and that he did so with the intent to distribute it.  United States v.

Anderson 289 F.3d 1321, 1325 (11th Cir. 2002).  His motion contends that this was not his

address, and that he could not have exerted any control over the contents of the residence

The government introduced into evidence during trial numerous documents showing Carter's address to be 304 Payson Road. These documents included a billing statement from Carter's former attorney (Exhibit 18), a bank statement addressed to Jimmy Carter or Sandra Carter (Exhibit 20), a letter from the City of Montgomery addressed to Carter's game room business (Exhibit 21), and a credit card statement addressed to Carter (Exhibit 22). The evidence presented to the jury established that Carter had sufficient ties to the residence, and his claim that he did not live there or have control over the items inside is without merit. See Jones v. United States, 362 U.S. 257 (1960) (finding expectation of privacy extends to non-owner of apartment because of possessory interest in items contained within.)

In this Circuit, an "indictment must be held sufficient unless it is so defective that it does not, by any reasonable construction, charge the offense . . . ." United States v. Pease, 240 F.3d 938 (11th Cir. 2001). Accordingly, Carter's complaints against the sufficiency of the indictment should be dismissed.

**2.     Carter's consent to be searched after the conclusion of the legitimate traffic stop voids his claim that the search violated the Fourth Amendment.**

Carter's motion to vacate sentence sets forth a version of the events surrounding the search which was not presented during the suppression proceedings, and was not before the Magistrate Judge. He contends that he was unconstitutionally detained for 45 minutes, although the testimony from the suppression hearing indicates that approximately thirty minutes elapsed between the initial stop and discovery of drugs on Carter's person. (R3:174:2-5.)

The Supplemental Recommendation of the Magistrate Judge found that it was "an undisputed fact" that Carter gave consent for officers of the Montgomery Police Department to

search his person.  (R3:174:6.)  In this Circuit, "further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter."  United States v. Hernandez, 418 F.3d 1206, 1210 (11th Cir. 2005).  Further, the objections filed by Carter did not dispute the basic facts of the traffic stop, but questioned whether Carter's consent to be searched was voluntary.  (R3:182:5.)  These objections were overruled by this Court.  (R3:188.)  In light of the record before this Court, Carter's claim regarding his detention is factually inaccurate and must be dismissed.

> **3.**     **The government filed a notice of enhancement under 21 U.S.C. § 851.**

The record in this case clearly shows that on March 31, 2003, the government filed a notice of information to establish a prior conviction for a drug felony (possession of a controlled substance in the Circuit Court for Montgomery County, CC-98-0880) against Carter for purposes of 21 U.S.C. § 851.  (R3:181.)  Carter's claim on this issue is factually inaccurate and must be dismissed.

Carter's claim seems more grounded in the calculation of his criminal history category, although he informed this Court at sentencing that he did not object to any of the content of the PSI.  Exhibit C, at 3.  He asserts that three robbery convictions were consolidated for sentencing and should not have been treated as separate convictions in the presentence investigation report.  However, the convictions cited by Carter arose from separate robberies, and each had a separate docket number.  See PSI, at ¶¶ 36-38.  See United States v. Hernandez-Martinez, 382 F.3d 1304, 1307-08 (11th Cir. 2004) (holding that cases were not consolidated for federal sentencing purposes where offenses were docketed separately and received separate judgments.)

Carter also contends that he was wrongfully assigned 1 criminal history point for each of

12

three misdemeanor convictions.  See PSI, at ¶¶ 43-45.  The United States concedes that the

Probation Office may have incorrectly attributed these points to Carter, as the convictions were

for misdemeanors that did not carry the minimum probation or sentence required under the

guidelines.  See U.S.S.G. § 4A1.2(c).  However, even if Carter is correct in his claim that the three

points were not merited, and they are subtracted from his criminal history point total, the resulting

score of 11 places him in Category V, which, when combined with an offense level of 38, still

carries a sentencing guideline range of 360 months to life.  See U.S.S.G. Chapter 5, Part A.

Therefore, Carter cannot demonstrate that he was prejudiced by the inclusion of criminal history

points for the misdemeanor convictions listed in ¶¶ 43-45 of his PSI.

     Carter's final submission regarding his sentencing is whether his prior convictions should

have been proven to a jury.  This notion was firmly rejected by the United States Supreme Court

in Almendarez-Torres v. United States, 523 U.S. 224, 118 S.Ct. 1219 (1998), which held that the

government need not allege in its indictment and need not prove beyond a reasonable doubt that a

defendant had prior convictions for sentence-enhancement purposes.  Carter relies upon a partial

concurrence by Justice Thomas in Shepard v. United States, ___ U.S. ___, 125 S.Ct. 1254, 1264

(2005) to advance his argument that the rationale of Almendarez has been substantially

undermined and should be formally discarded.   The Eleventh Circuit has recently held that

"Almendarez-Torres remains the law until the Supreme Court determines that [it] is not

controlling precedent."  United States v. Orduno-Mireles, 405 F.3d 960, 963 (11th Cir. 2005).

Carter's reading of Shepard does not comport with the decisions from the Supreme Court and the

Eleventh Circuit which continue to reaffirm the viability of Almendarez.

     The Supreme Court firmly repeated its holding from Apprendi v. New Jersey, 530 U.S.

466, 489-90, 120 S.Ct. 2348, 2362-63 (2000) that "any fact (other than a prior conviction), which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." See United States v. Booker, 543 U.S. ___, 125 S.Ct. 738, 756 (2005). This Court has also held that "[t]he reason for the exception for prior convictions is clear: 'a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees.'" Orduno-Mireles, 405 F.3d at 962, quoting Jones v. United States, 526 U.S. 227, 249, 119 S.Ct. 1215, 1227 (1999). This line of cases dictates that Carter's claim regarding the use of his prior convictions in sentencing is without merit and must be dismissed.

**D.     Carter's Ineffective Assistance of Counsel Claims Should Be Rejected Because They Are Without Any Merit.**

Carter asserts that his counsel was ineffective on the following grounds: (1) trial counsel's failure to challenge the calculation of his criminal history points; (2) trial counsel's failure to challenge the accuracy of the facts presented in his presentence investigation report; (3) trial counsel's failure to timely file a motion to suppress evidence; and, (4) appellate counsel's failure to argue United States v. Booker while his case was pending on direct appeal or review.

To succeed on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance was deficient and that the deficient performance prejudiced his case. Strickland v. Washington, 466 U.S. 668, 694 (1984); see also Bell v. Cone, 535 U.S. 685, 697-98 (2002) (reaffirming the Strickland v. Washington standard for reviewing ineffective assistance of counsel claims); Caderno v. United States, 256 F.3d 1213, 1217 (11th Cir. 2001)

(applying two-part test of <u>Strickland v. Washington</u>).  More specifically, Carter must show that (1)

identified acts or omissions of counsel fell below an objective standard of reasonableness, and (2)

that his counsel's alleged errors or omissions resulted in prejudice to him to such an extent that,

without counsel's alleged errors or omissions, there is a reasonable probability that the outcome of

his trial would have been different.  <u>Yordan v. Dugger</u>, 909 F.2d 474, 477 (11th Cir. 1990).

In analyzing counsel's performance under the performance prong of <u>Strickland</u>, this Court

must presume that the conduct of counsel was reasonable, <u>Yordan v. Dugger</u>, 909 F.2d at 477.  A

"[d]efendant must prove deficient performance by a preponderance of competent evidence, and

the standard is 'reasonableness under prevailing professional norms.'" <u>Gallo-Chamorro v. United

States</u>, 233 F.3d 1298, 1303-04 (11th Cir. 2000)(footnotes omitted).  The Eleventh Circuit has

described a defendant's burden with regard to the deficient performance prong of an ineffective

assistance of counsel claim as follows:

> Because there is such a wide range of constitutionally acceptable performance, a
> petitioner seeking to rebut the presumption of adequate performance must bear a
> heavy burden:
>
>> The test has nothing to do with what the best lawyers would have done.
>> Nor is the test even what most good lawyers would have done.  We ask
>> only whether some reasonable lawyer at the trial could have acted, in the
>> circumstances, as defense counsel acted at trial. ...  We are not interested
>> in grading lawyers' performances; we are interested in whether the
>> adversarial process at trial, in fact, worked adequately.
>
>> ... Thus, in order to show that counsel's performance was unreasonable, the
>> petitioner must establish that *no competent counsel would have taken the
>> action that his counsel did take....*

<u>Grayson v. Thompson</u>, 257 F.3d 1194, 1216 (11th Cir. 2001) (internal citations omitted).

The Eleventh Circuit has described a defendant's burden in demonstrating that his

counsel's deficient performance prejudiced his case as "high,"noting that it is not enough to show that any errors had some conceivable effect on the outcome of the proceeding. Robinson v. Moore, 300 F.3d 1320, 1343-44 (11th Cir. 2002). To succeed on the ineffective assistance of counsel claim, the defendant must show that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different.

As the Eleventh Circuit has noted, "[i]t is well established that a habeas petitioner must demonstrate both deficient performance and prejudice, and that a failure to demonstrate either prong constitutes a failure to demonstrate ineffective assistance of counsel." Bottoson v. Moore, 234 F.3d 526, 532 (11th Cir. 2000); accord, Robinson v. Moore, 300 F.3d at 1343. In raising ineffective assistance of counsel, Carter has failed to plead facts sufficient to demonstrate that he was prejudiced by any of counsel's actions. For that reason, his § 2255 motion should be summarily dismissed.

1.    **Carter cannot establish that he was prejudiced by trial counsel's failure to challenge the calculation of his criminal history points.**

As discussed in Part III.C.3. above, Carter claims that his criminal history points were incorrectly calculated due to the inclusion of three misdemeanor convictions for which he received one point each. See PSI, at ¶ ¶ 43-45. However, even if three points were deducted from his criminal history point total, he would still have a total of 11 criminal history points, which qualify him for Category V. When combined with Carter's offense level of 38, Category V results in a guideline sentencing range of 360 months to life. This was the same range under which Carter was sentenced. Therefore, he cannot demonstrate the necessary prejudice required under Strickland, and this claim should be dismissed.

**2.      Carter cannot establish that he was prejudiced by trial counsel's failure to challenge the accuracy of his presentence investigation report.**

Carter asserts that his trial counsel was ineffective because he failed to challenge the attribution of 60 kilograms of cocaine to him during sentencing. At a minimum, the drug quantity for which the Court held Carter responsible was based on trial testimony concerning Wallace Salery's sales of cocaine to Carter. See PSI, at ¶ 20. However, for sentence calculation purposes, the PSI only attributed 30 kilograms of cocaine, which placed Carter within the maximum offense level of 38. See PSI, at ¶ 26.

As discussed above in Part III.C.1(c) above, drug amounts established by a preponderance of the evidence may be considered at sentencing. United States v. Rodriguez, 398 F.3d at 1296. Salery's unrebutted testimony at trial met this standard. (R16:27-28, 35.) Thus, it was appropriate for this Court to credit Carter with the amounts of cocaine received from Salery. The drug quantity attribution was correct under controlling authority, and the continued viability of extra-verdict enhancements negates Carter's theory of ineffective assistance at sentencing, as he does not demonstrate how the outcome of his case would have been different. In this Circuit, counsel cannot be ineffective regarding an issue that would not succeed, and this claim of ineffective assistance must fail. See United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).

**3.      Carter cannot establish that he was prejudiced by trial counsel's failure to file a motion to suppress evidence seized at 304 Payson Road.**

Carter asserts that his counsel was ineffective because he failed to file a motion to suppress evidence seized from 304 Payson Road. He cites Huynh v. King, 95 F.3d 1052 (11th Cir. 1996) as authority for receiving an evidentiary hearing in this Court on whether ineffective

17

assistance denied him the benefit of his Fourth Amendment rights.  <u>Huynh</u> instructs that the reviewing court must question whether there was "a meritorious Fourth Amendment claim that necessitated the filing of such a motion? Second, if there was a valid Fourth Amendment claim that counsel should have raised in a motion to suppress, was the evidence that should have been excluded at trial so critical that, but for counsel's failure to file the suppression motion, there is a reasonable probability that the verdict would have been different?"  95 F.3d at 1058, n.6.

Carter argues both sides of the suppression issue by claiming on one hand that counsel should have filed a motion to suppress, but on the other that he did not own the property, he did not live at that address, and did not have actual or constructive possession of the drugs seized during a search of the property.  A defendant must have an expectation of privacy in a premises in order to file a motion to suppress evidence seized therefrom.  <u>United States v. Richardson</u>, 764 F.2d 1514, 1526 (11th Cir. 1985).  Carter asserts that a motion to suppress would have been based on facts which, if true, would destroy his standing to file such a motion.

The testimony and evidence at trial established that the residence belonged to Carter's girlfriend and business partner, Sandra Thomas, and that Carter was observed living at the address.  The government also introduced into evidence during trial numerous documents showing Carter's address to be 304 Payson Road.  These documents included a billing statement from Carter's former attorney (Exhibit 18), a bank statement addressed to Jimmy Carter or Sandra Carter (Exhibit 20), a letter from the City of Montgomery addressed to Carter's game room business (Exhibit 21), and a credit card statement addressed to Carter (Exhibit 22).

The evidence presented to the jury established that Carter had sufficient ties to the residence, and his claim that he did not live there or have control over the items inside is without

18

merit.  See Jones v. United States, 362 U.S. 257 (1960) (finding expectation of privacy extends to non-owner of apartment because of possessory interest in items contained within.)  His demonstrated connection to the residence validates the consent he gave to search the home. (R16:500.)

Carter also claims that his ownership of the residence was intentionally misrepresented to this Court when an affidavit averring that he lived at the residence was used to obtain a search warrant.  The officer's impression that Carter owned the residence was justified by his signing a consent form to search the premises and watching the search with his girlfriend, Sandra Thomas. (R16:500, 507-08.)  Even though he did not own the residence, the impression that he did rendered the officer's technically incorrect representation unintentional.

### 4.  Carter could not benefit from the application of United States v. Booker.

Carter asserts that his appellate counsel was ineffective because he failed to amend his appeal so that the facts of his case could be evaluated under United States v. Booker, 543 U.S. ___, 125 S.Ct. 738 (2005).  Carter instructed counsel to amend the pleadings in his case to incorporate the decision from Blakely v. Washington, ___ U.S. ___, 124 S.Ct. 2531 (2004), and also asked counsel to file a petition for certiorari after the Booker decision.  However, either course of action would have been futile, as Blakely did not apply to the federal sentencing guidelines, and the initial brief filed by Carter did not raise any issue that can be considered an antecedent of Booker, or any Sixth Amendment sentencing issue.  See United States v. Williams, 374 F.Supp.2d 173, 176 (D.D.C. 2005) (noting that majority of circuits found Blakely did not apply to federal guidelines); see also Exhibit D.  The Eleventh Circuit has made clear that, where a litigant's initial brief did not raise actual Booker issues, it is not bound to treat those issues as timely raised on

19

Booker remand.

In United States v. Vanorden, 414 F.3d 1321(11th Cir. 2005), the Eleventh Circuit stated

[N]othing in the [Booker] opinion requires or suggests that we are obligated to consider an issue not raised in any of the briefs that appellant has filed with us. Nor is there anything in the Supreme Court's remand order, which is cast in the usual language, requiring that we treat the case as though the [Booker] issue had been timely raised in this Court. In the absence of any requirement to the contrary in either [Booker] or in the order remanding this case to us, we apply our well-established rule that issues and contentions not timely raised in the briefs are deemed abandoned.

United States v. Vanorden, 414 F.3d at 1323.

In those cases where the U.S. Supreme Court has remanded cases to the Eleventh Circuit for consideration under Booker, and Booker was not raised in the initial brief, the result is the reinstatement of the petitioners' sentences. In addition to Vanorden, several other recent Eleventh Circuit decisions strongly suggest this result. See United States v. Bordon, 421 F.3d 1202, 1206 (11th Cir. 2005) (Defendants' Booker claim was not timely raised in their initial brief on appeal and is thus subject to this Court's prudential rule.) See also United States v. Smith, 416 F.3d 1350 (11th Cir. 2005); United States v. Dockery, 401 F.3d 1261 (11th Cir. 2005); United States v. Levy, 379 F.3d 1241, 1242 (11th Cir. 2004), reh'g en banc denied, 391 F.3d 1327 (11th Cir. 2004), vacated by --- U.S. ----, 125 S.Ct. 2542 (2005), reinstated by 416 F.3d 1273 (11th Cir. 2005).

In Fuller v. United States, 398 F.3d 644, 650, n.4. (7th Cir. 2005), cert. denied 126 S.Ct. 238 (2005), the United States Court of Appeals for the Seventh Circuit found that claims of ineffective assistance based on Booker were untenable, because, under the Booker caseline, deficient performance could not be shown due to an inability to meet the Strickland standard for prejudice. See also United States v. Williams, 374 F.Supp.2d at 176-77 (collecting cases in which

20

courts unanimously concluded that it was not outside the "range of competence" if counsel failed to anticipate Blakely or Booker).  Carter cannot prevail on an ineffective assistance of counsel claim where, as here, the grounds for ineffectiveness simply did not exist at the time of his sentencing, and the substance of the claim would probably not make a difference in the post-Booker context.  Because he "has failed to elucidate any legitimate objections his trial counsel failed to make to the sentencing enhancements imposed by the trial court that would have resulted in a more favorable sentence," he has not met the Strickland standard for ineffective assistance. Fuller at 650-51.

Carter has failed to show in either of his ineffective assistance allegations that (1) identified acts or omissions of counsel fell below an objective standard of reasonableness, and (2) that his counsel's alleged errors or omissions resulted in prejudice to him to such an extent that, without counsel's alleged errors or omissions, there is a reasonable probability that the outcome of his proceeding would have been different.  Yordan v. Dugger, 909 F.2d at 477.  Therefore, these claims should be dismissed.

## IV.  A HEARING IS NOT NECESSARY IN THIS MATTER

Carter has not pleaded facts or presented sufficient evidence or argument which, if true, show that he is entitled to an evidentiary hearing, and his claims for relief should be denied without an evidentiary hearing.  See Blacklidge v. Allison, 431 U.S. 63, 73-74 (1977); Tejada v. Dugger, 941 U.S. 1551, 1559 (11th Cir. 1991); United States v. Laetividal-Gonzalez, 939 F. 2d 1455, 1465 (11th Cir. 1991).  Should this Court determine that Carter has made any arguments not addressed in this response, the United States would request the opportunity to further respond to those arguments.

## V.  CONCLUSION

For the above reasons, Defendant/Movant Jimmy Carter, Jr., has failed to demonstrate that he is entitled to any relief from this Court, and his § 2255 motion should be denied without an evidentiary hearing.

Respectfully submitted this 22nd day of December, 2005.

/s/ Todd A. Brown
TODD A. BROWN
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
todd.brown@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **JIMMY CARTER, JR.,** | ) | |
| | ) | |
| **Defendant/Movant,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 05cv1016-F** |
| | ) | **(CR NO. 02-07-N)** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2005, I electronically filed the foregoing with the Clerk f the Court using the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant: Jimmy Carter, Jr., #10986-002, Federal Correctional Institution, P.O. Box 34550, Memphis, TN 38134.

Respectfully submitted,

LEURA GARRETT CANARY
UNITED STATES ATTORNEY

/s/ Todd A. Brown
TODD A. BROWN
Assistant United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
todd.brown@usdoj.gov